3-18-0096 Juliet Hatcher and Johanna Krauss, appellants by Stephen Buck v. James Hatcher and Richard Gentry, Jr., appellees by Christopher Siemens Please proceed Good morning. My clients, the plaintiffs in the Inland Litigation are here today appealing the dismissal of count four of their already-conclined against Cynthia Hatcher. In this case, I should say more accurately, the estate of Cynthia Hatcher, since she passed away after the commencement of litigation but prior to trial. And specifically, count four of the complaints against Cynthia Hatcher is for unjust enrichment. They essentially allege that James Hatcher, the trustee of the Hatcher Trust, breached his fiduciary duties and abused his discretion, making all distributions of principal and income under the trust only to his wife, Cynthia Hatcher, one of the four main beneficiaries, and to the exclusion of the other beneficiaries being James Hatcher's daughters and the granddaughters of the trust sector. The testimony of the trial was disputed that all the principal and all the income, or not all the principal, I'm sorry, a significant portion of the principal, $96,200, and all of the income of the trust of almost $312,000, was distributed to Cynthia during the 20-year term of the trust. Ultimately, the plaintiff's claim on the unjust enrichment is that this was an abuse of discretion, abuse of the authority of the trustee, and essentially that the plaintiffs were entitled to receipt of those benefits. That they were superior to claim certainly is to receipt of the principal and even to some of the income under the trust, and that Cynthia Hatcher was therefore unjustly enriched by receipt of these funds and the retention of the same. I've got a question with regard to this appeal, the issue about James' distribution, right? James Hatcher's distribution? Yeah, the way the funds were distributed. Yes. Okay. That sort of fits into count two of the amended complaint, doesn't it? Well, it does as well. I mean, in count two of the amended complaint… It's a breach of impartiality and… Right, and basically neglecting the needs and interests of the other beneficiaries. Although count two was directed just against James Hatcher, and there was actually judgment on some of the counts concerning Hatcher in the case against James Hatcher 7 shortly after the trial as well, so those aren't directly at issue any longer. But there is a relationship between the other counts and the allegations that James Hatcher breached his fiduciary duties and abused his discretion. So are those issues in count four, the unjust enrichment? The unjust enrichment? Yes. Yeah, and essentially what the issue is, is to state a claim for unjust enrichment, particularly as the HBI Healthcare case said in the brief, when the benefit's been transferred to a third party, typically the benefit is transferred to the defendant from the plaintiff in some form, but the court's recognized where the benefit is transferred to a third party, you can still have an unjust enrichment claim even without fault of the third party. So to the extent that the allegations against James and the abuse of his discretion and the breach of his fiduciary duty in the administration of the trust are raising others, it ties in with the unjust enrichment claim because it shows the benefit was transferred to, in this case, Cynthia Hatcher when that benefit was transferred to her. How do you establish that your clients have a greater claim to it than Cynthia? I mean, you haven't alleged that she did anything wrong, so it must be a greater claim. Yes, it is a greater claim, and in particular, we focused in the briefs and recognized the distinction between the language of the trust of the distribution of the income and the language of the trust of the distribution of principle and what the discretion and the authority of the trustee is on each of those, and particularly in regard with the distribution of principle, the language is much more restrictive as to what the trustee can do. I mean, there was no evidence that Cynthia even knew about the distributions that were put into a joint account that she owned with James, right? Correct. Okay, so I know she died, but there's no evidence she even knew, right? Well, that's sort of what the court found, and we disagreed with that, and you can discuss in the brief, but I believe there was ample evidence. I mean, first and foremost, there was a testimony of James Hatcher at trial that he deposited those, distributed the funds to his wife, deposited them in the joint account, that they had equal access and the right to use and spend the money, and that they did, in fact, spend money out of that account during the 20-year term of that. The other thing that was in the record, and it was part of what the court took judicial notice of, there were two separate accountants, but they accounted for the 20-year life of the trust that were filed by James Hatcher in response to count one of them. Now, the grandfather didn't give James, didn't provide for James, I guess, made James the trustee. Correct. He was not an officiator, he was only a trustee. And, again, going back to the evidence of the receipt of the benefit by Cynthia, James certainly testified to the extent that he distributed it to his wife, that they were deposited in the joint account, that they had equal access and use of. It was also testimony of, he used the funds, distributed them, put them in the joint account, basically the joint debts that he and his wife had to the trust, and those were alleviated. In part of the entire, it was about 1,000 pages or so, the accounting records that were submitted, and the court did take judicial notice of the accounting. There were bank statements for the Hatcher Trust itself that were part of that accounting, which started in February 2009, and those bank statements actually were sent and addressed to Cynthia Hatcher, the residence of Cynthia James Hatcher. It both showed that the checks were written to Cynthia Hatcher from the trust. There was also some joint account statements that were submitted into evidence. They reflected the deposit of those funds, the accounts. As an aside, by the way, where did James go to school? Columbia Law School? I think he actually went to Harvard. I may have that wrong, but I thought it was Harvard that he went to law school at. Okay, because there's a statement about, that I was wondering, is it Harvard or Columbia, because there's a statement in the brief about Columbia. Maybe I have that wrong, but he did go to what I would agree to be a prestigious law school. Okay, but you were under the established Harvard? Yes. That's an aside. In any event... He was sophisticated, despite his education. Correct. He certainly practiced law on his own for a number of years. Certainly, I believe, understood the law, understood the obligations of a trustee and a fiduciary. In fact, James Hatcher actually drafted the trust for his father and his grandfather as well, so we certainly understood what was put into that trust and what the obligations were. Ultimately, the trial court dismissed the account for basically making two rulings. The first is found that James, as trustee, had unfettered discretion in making the distributions of principal and income. We certainly believe that's in there, and I'll address that in a moment. And the other part was that, what you alluded to earlier, Your Honor, that the trust has been defined, but there's no proof that she had received the benefit itself. As to the unfettered discretion, again, I point to the fact that the trust contains specific provisions separate and distinct on distribution of the income and distribution of the principal. They're handled separately, and the language and even the restrictions and limitations are different. I would concede that, with regard to the distribution of income, the discretion is much broader, but it would be more limited. And I think, again, one of the fundamental principles of the construed witness rulings, including trust, is you look at the entirety of the documents.  And I think, in this case, part of the issue is the trial judge focused only on the use of the term sole discretion, both in the income and the principal, and didn't look at the rest of the language, particularly with the principal distributions. And that language was for the principal distributions that I referred to on page 2 of the trust itself. And it says that the trustee shall have the power to approach upon the principal of the trust estate for the benefit of any one or more of the beneficiaries of the trust. As in his sole discretion, he shall determine whether because of sickness, accident, or otherwise, and for educational purposes. And the court, I think, essentially looked at the fact that he had sole discretion and effectively wrote out and ignored the rest of the sentence of whether because of sickness, accident, or otherwise, or for educational purposes, which in and of itself is an improper construction. The court later in making this ruling also said he looked at the term otherwise in that phrase, and he sort of read that as a stand-alone element, and basically meant that that gave the trustee the right to exclude the principal for any reason. I think that also flies in the face of the plain language and even the grammar used in setting it out. And let's talk about it in brief. In one regard, violence is the last thing to see in the rule, which applies to all registries. And I know Hildreth talks about qualifying words and phrases are applied to words immediately preceding them and not those more below. When you look at that, it says whether because of sickness, accident, or otherwise, and for educational purposes. Otherwise is set off by the countenance with regard to accident. Otherwise modifies accident. It's not its own catch-all for any reason. If that was the intent, it certainly could have said whether because of sickness, accident, or otherwise, in the possible period. And that's not the use of it. Talk about it in brief again. I know there's sort of a fascinating issue, the accident-accounting issue, and that's a stylistic more than a strict rule of construction like the last thing to see in the rule. But again, the placement of a comma does make a difference in whether you decide things are grouped together or separate on their own. And again, accident or otherwise are encapsulated as part of that and suggest that the otherwise is modifying and addressing the point of the accident and not as its own stand-alone. And I would also point out that there are other provisions in the overall purpose of the precedent that does provide with regard to principle. The principle is only to be distributed to the granddaughters, the plaintiffs in this case and their sister, at the termination of the trust at the end of 20 years. And there's specific language that the trust shall be divided into equal shares for each of the granddaughters. There's language about income not distributed being added to the principle annually. There is language about if a granddaughter, if the principle is made for a granddaughter, that is deducted from the granddaughter's share at the end. So it does show an overall intent to benefit the granddaughters at the termination of the trust with a distribution of income, all of which again flies in the face of the notion that the trustee can distribute the income for any reason of his sole whim or discretion. What about the language in the trust that says they shall pay so much of the net income of the trust estate as he shall in his sole discretion determine in installments of equal or unequal amounts as a sole discretion? And certainly I would say that's with regard to the income, and it is broader, but I also would argue that it's not without limits in and of itself, and that goes to the point I was getting to on some of the cases that the court provided on. But the Peck case, the Peck v. Crowley case out of four districts, talks about the fact that in interpreting the exercise or construing the exercise of discretion, the court can look for the remedy of uses or preventative uses by looking at the entirety of the language. And in that regard, with regard to the distribution of income, it does say shall pay to them an equal, each of the beneficiaries' name, which are four, in equal or unequal amounts. It doesn't necessarily say entirely exclude all other beneficiaries Because I'm curious about the definition of installments, or sums of money to add one of several equal payments. That's a different definition of installments. Yeah. That's of equal payments. And I think all of that language suggests that there's not a notion of, it does say equal or unequal amounts, but it talks about installments, which suggests some level of equality or some level of even regularity, and it says no less than quarterly, which does suggest that the income be paid to all the beneficiaries, even if in equal or unequal amounts. It doesn't necessarily support the notion of entirely excluding one. And that, I think, goes into the fiduciary duties of the trustee, of impartiality, and to avoid self-defeating. Because that phrase, I suppose it could be read, the argument is it could be read in different ways. I mean, does the language not authorize unequal payments between the beneficiaries, but rather authorizes unequal installments to be paid from quarter to quarter? In my opinion, it could certainly be in the entirety. If there was an overreaching principle to benefit the granddaughters under the trust, there was a provision, at least as to the income that the wife could receive, and installments in equal or unequal amounts to all four. I don't think it's entirely clear, and I don't think it necessarily suggests or supports that everything is intended to be paid or could be paid to just simply the wife with the exclusion of all others. And, again, I think when you, and this is the Petty Trolley case that says, I mean, looking at the court's exercise of discretion, I think it's fair to look at the terms of the discretion itself, including any accompanying standards, as well as the overall purposes of the trust and the purpose of the discretionary power that were granted. In Petty Trolley, you know, the judge relied on that, and I think essentially saying that sole discretion meant that the judge couldn't interfere with the exercise of discretion, that it was left entirely to the trustee as a sort of hands-off to the judge. With Petty Trolley, there was language even more broad and granted authority, and even a mistrust here. In that case, the trustee, there was language that the trustee's decision in deciding to make or not make distributions is final, even if arbitrary and unreasonable. And yet, in the Peck case, Justice Cook found that the decision of the trustee not to make a distribution for the care and maintenance of the beneficiary was an abuse of discretion by looking at the entirety of the trust and the entirety of the language. And so, again, I think today... So that appears to be whether or not the language of the trust, whether it did not appear to give James the authority to defer the amounts of installment payments between the beneficiaries. Well, I think it's whether he gave him the authority to exclude one or two. I think there is language that said equal or unequal payments, but nothing that would suggest entirely excluding all other beneficiaries in favor of one who receives all income in all principle. How do you interpret the installment amount in that sense? To me, I don't necessarily know that it means that it has to be equal amounts because you have the other language of equal or unequal amounts, but I think what it suggests is there's going to be regular payments to the beneficiaries over a period of time. The language even says no less than quarterly. The installments, by definition, are equal amounts. And I understand that. And certainly, I think the language is in our fault. And, again, it cuts against the notion. Who prepared this document? James Hatcher, the trustee. Right. Right. I mean, that's my point. So how do you interpret when the trustee is the one who drafted it? Well, I think in that case, the typical instruction is that the duties are construed against the drafter of the document. And in this case, How clear is that? Well, I don't think it's necessarily particularly clear. I mean, I think it's clear that the intent is to distribute to all beneficiaries on a regular basis, no less than quarterly, in equal or unequal amounts. But I don't think it necessarily supports the notion that you entirely strike out some of the beneficiaries and over a 20-year term, you favor one over all others. It gives regards to the income. Again, I don't know that it gives a complete and unfettered expression because there are some other limitations of the regularity and the distribution to all of the beneficiaries and the installments, no less than quarterly. Were there any distributions to anybody other than Cynthia? The other beneficiaries received nothing from that income, is that correct? During the 20-year term of the trust, correct. I will add that the termination of the trust, and the trust had provision that it automatically terminated at the end of the 20 years following the death of the settler, there were $13,000 paid to the plaintiffs. It was all that was left of the trust at that point. The trust principle. With regard to the net income, it's clear that all four were supposed to get something and only one got anything. So there's your unjust enrichment right there because the others got nothing. Yes. It's payment, not payment or non-payment. They had to get something. Correct. And then it does say shall pay installments no less than quarterly, certainly suggesting the thought that they would all receive something. That's not necessarily an equal amount because the language later says an equal or unequal amount, but it does suggest that they would be receiving something. So we're not here to determine what the amount of unjust enrichment is, only whether there was unjust enrichment, whether it be $4 or $4 million. And I would concede that with regard to the distribution of the principle, it is much more difficult to determine the amount because of the language of the trust. And Cynthia was certainly entitled to receive some level of the income. I would draw the distinction, however, with the principle. And, again, the principle was whether because of sickness, accident, or otherwise, and educational purposes. And the only testimony was that James Hatcher said he made the distributions from the trust based upon the availability of funds and the recognition of joint debts that he and his wife had to the trust, that there was no testimony that he made any of the distributions or any of the principal distributions or any of the enumerated purposes of sickness, accident, or otherwise, or educational purposes. There were refunds that James made to Cynthia. They repaid the trust, and then there were refunds to Cynthia. Yeah, well, in some, and we set out some of this in the brief, too, in the statement of facts, you know, there was, with regard to some of the notes, there was distributions ahead of time. In one situation, it was $30,000 distributed from the trust to Cynthia. Out of that $30,000, about $15,000 or so was paid in interest on several of these notes. Within a short time, within a couple of weeks, the distribution was $30,000. And then within a couple of months of the payment of the $15,000 towards interest on these notes, $15,000 was kicked back out to Cynthia. And the same happened when the $58,300 note was paid in full. I see the quote marks in the air. You know, again, I don't remember the exact amount, but like $30,000 was the median. After $46,000 was paid to the trust to pay the balance, a good portion of that, about $30,000 or so, was paid back almost immediately. And through the rest of the year, it was $52,000 paid in that year to Cynthia. So, again, I think your point is correct that there was, it was almost a shell game. You put the money in, credit, you know, or strip the money out and pay it back, note it as paid, then kick the money right back out. I wish my bank would do that for me. The money would have been kicked into the joint account. Correct. There's no bankruptcy in the background of this, is there? No, but certainly not that I'm aware of. I'll be back on the phone. Okay, thank you. Thank you. Thank you. Good morning. I'd like to start off with some of the hypothetical that I think kind of frames the entire issue. And I'd like to redirect the Court's attention a little bit away from what Jim Hatcher did to the real issue here with respect to Cynthia Hatcher, and that is what benefit did she receive? Because that's what this case's appeal is about. Account four is only about what? Isn't a refund of an interest payment a benefit? Did they prove that the refund was given to Cynthia? It went into an account bearing her name. Doesn't the burden shift to you then to show she didn't know about it? How would it shift to us? Simply, but here's my hypothetical for you, Your Honor. Well, she has an alleged fraud, forgery. She's not alive to allege anything at this point. She's not alive to put any evidence on the stand at trial. But think of it this way for just a second, please. If today my parents give me a check for $10,000 and they tell me, this is for your wife and your children, and I take that check and I go to a joint account and I deposit it, and at the same time, after I've deposited it into this joint account with my wife, later that afternoon I decide that I feel really lucky and I go to the Paradise and I take that $10,000 out myself and I bet that $10,000 at Paradise and lose it. Has my wife or my children benefited from that mere deposit? Because that's all they proved at trial, that that amount was deposited into the account. There is no evidence that Cynthia Hatcher ever received any benefit from that deposit. There is no evidence, despite what counsel just said, there is nothing in the record that establishes that Cynthia Hatcher ever exercised control over that joint account. The deposits are in the back of the checks. None of them are signed by Cynthia Hatcher. In fact, of all the checks that were put into evidence showing deposits in the account, the only one that had any writing on the back of it was writing like James Hatcher, saying for deposit only. So despite counsel's claims, and yes, if you don't look at the benefit issue, it certainly looks like there may be some unjust arrangement. Did she report any of that for purposes of income taxes? What do her tax returns look like? Was that just ignored? There's an argument in there by plaintiffs about the evidence of the tax returns, which we've addressed in our response. There's nothing in the tax returns that indicates that she received a benefit. There's nothing that establishes that. Those are joint returns. They're joint returns. They don't specifically say, I benefited from the deposits in this joint account. There's nothing in there that shows that. There's income claim. Pardon me? There's income claim. There's income claim. And a joint return. Yeah, and just like my income is mine and my wife's income is hers, but when we file our account, nothing shows that necessarily that she benefits directly from my income. And remember, too, that Cynthia Hatcher had her own job. There's no evidence that the bills, the things that that money was used for,  and that Jim Hatcher was depositing them and taking this money out. So in a word, If the income was to be paid out in installments of equal value, then if there was a I'm sorry, equal Hypothetically, if the installments, if the language in this press says installments, it says of equal or unequal value, but if installments are normally of equal amount, if that should have been paid to the beneficiaries in equal amounts, and it was not, but it was all paid to Cynthia going through that account, would that be an unjust enrichment? I suppose if that's the hypothetical that you're posing is that there's a requirement of equal installments, and they weren't paid, you'd still have to prove that Cynthia had received that benefit, right? But if Cynthia I mean, that's the question, legally. Is it proven when it goes into your joint account? Well, that's the plaintiff's argument, the fact that it just goes into the joint account. But again, like I say in the hypothetical, just the fact that they put that money in the account doesn't make that a benefit to all the joint In the same situation, we have all these cases out there about a testamentary joint account where the plan is the elderly person deposits money into an account with the intent that when they pass, that money would then pass on to the joint tenant, correct? But during the operation of that account, it's the elderly person typically who exercises control over that money until they die. In this case, what you have in that argument, what changes it is that the intended beneficiary in that example would be Cynthia Hatcher. Cynthia Hatcher is the one that dies, and Jim Hatcher is the one who exercised all the control over the account. And what we suggest, Judge, is that at least some evidence had to be presented at trial to show that Cynthia Hatcher exercised some sort of control or received some sort of benefit from the existence of the funds in that joint account. Because it is certainly possible that Cynthia Hatcher never even knew those funds were in the account. I'd like to come back to your question, too, Judge, more specifically. With respect to the language here, I understand your position with respect to the general meaning of the installment. I'm trying to figure out what my position is. Well, let me see. I'm looking at the language and looking at who the drafter of the trust documents, and then you look at the language and the definitions in English. It's really interesting the way you raise the question, Your Honor. Very interesting. And counsel says that, well, yeah, I guess it's probably not very clear. If you go to the record, Jim Hatcher's counsel argued that the language was ambiguous and even didn't offer proof. And counsel argued vehemently that this language was clear, that this was clear language, and that language says, while it says installment, it does say equal or unequal value. So we can't give installments the definition of equal value. The drafter specifically says that the payments, and probably this would be more clear if it said equal or unequal payments, but still, the drafter intended it. And the elder, Mr. Hatcher, executed this trust presumably with the intent... And the line goes on to say of all the beneficiaries, not just one. Yeah, of equal or unequal amounts. So the question is... So what is the equal and unequal amounts? Zero and a thousand are different. What is the modifier, right, in the first part of the language? Right, which goes back to... But quarterly, everybody could get $25, and the next quarter, everybody could get $50. So the installments are equal or unequal. Right, or the installments in any particular quarter could be equal or unequal. And this goes back, it raises a very interesting point. And that discussion is at every quarter, because if it's installments which are equal, but you can make the amounts different, given that language. Then the beneficiary should have been receiving... I think the court would agree that there are potentially more than one interpretation of this language. And as the court properly pointed out, or asked, and I'll answer your question, an ambiguity in a document is interpreted against the drafter, which is Jim Hatcher. This goes back and doesn't... None of this conversation establishes a benefit to Cynthia Hatcher. And that's the threshold here. That is the absolute threshold in this unjust enrichment case. Did Cynthia Hatcher receive a benefit that, one, she was not entitled to, or two, to which the children had a greater interest? And that's the question. So as we look at it, and what's the answer? What is the amount? Even if you decide, okay, there is some, what's been proven in the amount? What should it have been? How do we substitute it? We have ambiguous language that could be interpreted in multiple ways. Right? So, first of all... But the court didn't allow them to get to that point of what is the amount. It was dismissed out, correct? Well, the amount is that the argument is in there. It wasn't dismissed until the end of that discussion. It really shouldn't have been a dismissal. It should have been a directed verdict or a judgment. Well, the definition of unjust enrichment is that the third party, that the retention of the money, or the benefit, would be unjust where the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant. I mean, this is one of the definitions of unjust enrichment. The defendant procured the benefit from the third party through some kind of wrongful conduct. That's not an issue. Or the plaintiff, for some other reason, had a better claim to the benefit than the defendant. Correct. And what is that benefit? So, there's some other reasons. Yeah, and the reason, the only thing we have to look at is the trust language itself. And we've talked now quite a bit about the trust language, which says that the trustee is entitled, has the discretion, to give to the various beneficiaries in equal or unequal amount. And that's what we elected to do. I mean, so the question is, were these plaintiffs, for some other reason, have a better claim to the distribution of income? And I don't think they do, Judge. Under this income distribution provision, it leaves the full discretion of the trustee to determine what each beneficiary would receive. And that's one, you know, that's the triumvirate of this phrase. And the interesting thing, the... So, I mean, so one interpretation is, you wipe off the instrumental language, that you can pay these things, but just pay one person. Another interpretation is, he has discretion about how much, but when there isn't a strong investment, equal amounts all four. That's one interpretation. You know, we, myself and the co-defendant, argued at trial that there was ambiguity in the language. We lost that argument. And we offered an offer of proof on that issue. If the court finds that the language is ambiguous, we go back to, I suppose, the trial court, and then have the opportunity, hopefully, to put the offer of proof that it does. That's not been raised on this appeal. I didn't raise it. I didn't bring it. But in order to resolve the court's question... I wouldn't... No, it was... This is not specifically argued in the brief. But what's on appeal is the interpretation of this document and what happened, you know, what happened pursuant to this document. I understand what you're saying. So then it's raised in the before us. I would suggest you don't have to go there if you decide that there's not been adequate proof that Cynthia Hatcher received a benefit. And I've addressed in my brief, we have, I'm sorry, the issue of the donative intent. It certainly arises out of a completely different set of facts. It's a different situation than what we have here. We cited to you a Northern District case that, in their reply brief, counsel says that the plaintiffs say that those cases were overturned. That's not true, that those cases were not overturned. The Northern District case that we cited to you is the Tokyo plaintiff. I'm sorry, I forget the site off the top of my head. But the finding there was very similar, and I think constructive in this case, in that you had a spouse who committed a crime in that case here. We had someone who has now been found to have abused his discretion as a trustee. Mr. Hatcher was found to have been self-healing, who then deposited funds into a joint account. And that is all they proved. And the court said... The joint account is Cynthia and James. I'm sorry? The joint account is Cynthia and James. Correct. So in this case you have James, like the felon in the Federal District Court case, deposits the money in the joint account. The only difference there was the wife was still alive, and the wife would come forward with an affidavit and say, hey, I didn't know anything about this, I didn't have anything to do with it. And what were they trying to do to a wife in that case? They were trying to get the wife to do exactly what the plaintiffs were trying to do to Cynthia Hatcher's estate, to pay it back. And the court said no, because all you've shown... It doesn't say that it's a rebutted presumption. It doesn't say that. It doesn't say that there's any kind of presumption that she benefited because they put it in the joint account. What it says was the plaintiffs didn't have enough flesh on the bone, that they didn't bring enough to the trial, enough evidence to show that the wife in that case had benefited from the funds that had been deposited into the joint account. And if we think about the example that I gave, the same situation, it's identical. We take our own money, our own paychecks, and we put them in a joint account. And if we exercise, we take that money and we spend it on whatever we want to do with it, ourselves, not our spouses. How have our spouses benefited from this? And I understand, and I guess... But that... The other side had the burden of proof. Okay, but, you know, then there's the burden, you know, in the course of a trial, there's a burden of proof that's always there on one side, but then there's, once they've reached a threshold, think about putting something on them, the other side, and put something else on them when you talk about persuasion. And so have they put enough on by the fact that it went into that joint account? And, of course, you said you were prevented then from putting something else on. Who would know? Yeah, we were... But who would know? I mean, if you're the spouse, and your husband or your wife has put money into your significant other, has put money into an account, who would know whether or not you had an opportunity to exercise? They could have proof of that. There's a difference between exercising and knowing. There is a difference. Sure. Well, in this case, we have evidence of either. Wasn't there real estate that they were supposed to be paying interest to the trust, paying back interest to the trust? And so there was a refund of that amount. So she's got an interest in real estate. That they have now passed on to the plaintiffs. There's no unjust enrichment there. Because they had a loan, or they had some sort of loan based on this 45% interest in the property. That 45% interest, any interest that Cynthia Hatcher had in that, passed back to James when she died. And James has now passed that back on to the plaintiffs. So there's no unjust enrichment to the extent of any of the property. Or even the loans, I don't know. Yeah, ultimately. Because if we did now, if we made her pay back any of those loans, it'd be a double recovery. Because they've already got the property. So the only issue is whether or not she benefited from those deposits. At the end of the day, and here's what I say on that judgment. If there's a check out there that Cynthia Hatcher wrote on that account, that was within subpoena power. They subpoenaed bank accounts. And they only put in the deposits. They didn't put in the aspect or the portion of the statement that would have indicated how that money left the account. It's not all in there. You don't have it. But Cynthia Hatcher, if she were alive, could certainly have come in and testified and said, look, I didn't have anything to do with any of that. Jim took care of it all. Jim took the money. He spent the money. He decided how it came in. He decided how it came out. I had no control over that. And if that would have happened... Of course, you wanted to put some other proof on it with regard... You wanted to put on some other proof. With regard to the intentions with respect to the trust. Exactly. One minute. So what do you mean by the intentions of the trust? Well... I mean, what was your request? Well, the offer of proof was to go towards the intent of the trust or when the trust was created with respect to the ambiguous language that the court has already addressed. That's what the offer of proof related to. We didn't have that opportunity for that. I just wanted to answer a couple of quick questions for you. You went to Harvard undergrad and Columbia Law. That's right. I thought I got Harvard some place. Right. And I couldn't... I couldn't figure out where I was getting Harvard from. So it was undergraduate and Columbia Law. Right. And I just want to say one other thing. This is in my 23, 24 years of practice. This is my second oral argument here before you. The first time I came here, I had the great opportunity to present to you the issues related to Pennoyer versus Neff. An international spook, if you believe it. And today we get to talk about the Oxford comma. How about that? I think we've been very fortunate. Well, thank you for coming. I see you more than coming to our stage. Thank you, Counselor. I don't know if I can match that. I am glad that we've established that you were both right with regard to Harvard and Columbia. I want to address the whole notion again on the receipt of the benefit and even the hypothetical that Counsel put out there. The case that Counsel cited for Bank of Tokyo versus Malta and the Zell case from New York that he referenced. His hypothetical is I get the check, put it in the joint account, that afternoon I take it out. Well, what we just have is a rebuttal presumption. We have evidence put on that he took the money out. The wife didn't have any access or use to the money, and he spent it and lost it. And that's the same with the Bank of Tokyo versus Malta. That was a case where the husband stole from his employer, the bank, hundreds of thousands of dollars. The bank went after the husband and the wife, and ultimately they recovered some of the money from the husband and they went to put a lien on the marital residence to seize that as part of getting restitution for the amounts taken, and that's where the wife came in. And what did the wife do? She rebutted the presumption by coming forth with evidence in an affidavit that the evidence in that case said that house was purchased before he went to work for the bank, and my income paid the mortgage and paid the maintenance and the upkeep of that house. So we had the whole notion, and the court didn't necessarily analyze it. Who was trying to get the house? The bank. And again, under the notion, it went into a joint account, so she was unjustly enriched. But again, the presumption is, and the presumption of a gift is made upon the deposit of the funds in the joint account. That's Tumbleson versus Wyden. That was a case where two individuals were cohabitating and they never married and they effectively got divorced, and the man said, well, I get credit for it, and I should have a constructive trust in what I paid to the mortgage. Well, what he did is he took his checks and he deposited them in the joint account. The joint account was used to pay the mortgage, and the court said, no, you didn't pay the mortgage, you gave the gift to the joint tenant. So that's at the time it's made. And in this case, the burden was on them. Once the presumption of the gift is made on the deposit of the joint account, the presumption shifts to when they come forth with evidence to rebut that presumption. And we've heard a lot about, well, Cynthia died, so I couldn't put on evidence. But, I mean, because of the terms of the trust, just giving, even if she accepted that she had a benefit, that doesn't get you where you need to go, does it? I mean, don't you have to show that she was less entitled or the granddaughters were more entitled to that than she was because he has so much discretion? Well, again, I know there's been a lot of talk about how you construe the discretion with regard to income. I still say, in a minimum, in recognizing that, you know, there's been discussion of multiple ways to talk about how you distribute income, it is much different with regard to the distribution principle. And there was $96,200 of principle distributed to Cynthia, placed in the joint account. And I say, I also would say experience perjury a little bit to say that she didn't know. She was getting K-1s for the 20 years of the trust, getting bank statements for the joint account for the 20 years. They all showed money going into that account, showed that she was being assessed income, tax returns were filed recognizing that income. So, for the notion to say she had no knowledge, and again, unjust enrichment, there's nothing to say that you have to show control or dominion over the funds, just receiving the funds is unjust. And going back to your point, Your Honor, as far as, you know, the claim, the better claim to the funds, I think certainly with regard to the principle, you know, it said sickness, accident, or otherwise for educational purposes. The testimony was that the money was distributed based on its availability, and based upon the payment of joint debts. There was no testimony evidence that any of those principle payments or distributions were made because of sickness, accident, or otherwise for educational purposes. So, at least because of the $96,200, I think that there's been an establishment that there was a superior right of the plaintiffs to the amounts of principle distributed. Well, what about your opponent's statement that as regards to some of these things, they tried to put on some proof that the stock, that it was... They went in to offer proof on whether there were ambiguities in what the intent of the trust settlement was in creating the trust, which I would say is different from... They were not stopped from putting on proof as to rebutting the presumption of receipt of a benefit in any way, shape, or form. We certainly did take the position of trial, and I still think the language... Even though there's multiple ways to construe whether the installments are equal or unequal at different times, I think nonetheless, our point was, the language that I would use is to the extent that there's no authority for the trust to exclude the entire class of beneficiaries in making the income distributions. Now, whether that was... So, your point is, if there's one distribution of income, then all have to get some distribution. Even if it's... Even if the installment isn't given the term of equal for everything, but instead, the trustee shall pay no less than quarterly in equal and unequal amounts. There's no authority for the trustee to say, I'll pay Cynthia $10,000... So, Adam, your theory is that the trustee should have paid whatever it says, Cynthia, but $10 or something each one of the other beneficiaries. Arguably, yes. Certainly, the beneficiary would have been on notice of what was happening at the time, which goes to the other point. This went 20 years before they even were able to raise an issue as to whether something was proper or not. And by that time, the trust had effectively been dissipated through the actions of the trustee in making the distribution. One minute, please. So, ultimately, again, I think on the one issue on receiving the benefit, I think the trust accounting itself shows the money was going to Cynthia in a positive joint account. Bank statements over 20 years. Tax statements, K-1 statements this year. To try to argue that she didn't have a benefit or she didn't know about it, I don't think it's credible in the evidence that was put in. Whether or not she got a benefit is an issue, correct? Yes. Whether she knew about it or not is an issue. Well, I think she did get a benefit. No, no, I mean, whether or not she got a benefit is an issue. Yes. Is whether or not did she have to know about it to protect the concept of benefit? The lawyers in the cases don't directly say as much. They say it receives a benefit to the debtor in a claim if it retains that benefit. I mean, if she receives or retains a benefit, there's some knowledge of that. But there's not anything that says she has to use or spend the money or control the money. In any case, to receive the benefit, do you have to know about it? No. I've been unable to find anything to say the defendant has incited anything to that point either. At the end of the day, that money went into a joint account and went into a joint account regularly multiple times a year for 20 years. She received tax statements on it. I mean, I think it I don't necessarily agree that you have to show knowledge, but I think in this case knowledge has been shown anyway through the documents that the court judicial notice of and even the testimony of Jim Hatcher that it went into the joint account they had equal access to and did use the money in the account. So I think to meet that burden, even though I don't think it's clear in the cases that there is a specific knowledge requirement and I would say there is no requirement for use and control of the funds in any of the cases cited in the hypothetical that were offered all contain those extra facts that establish that the benefit wasn't received because the money went in, the money went out or when the money went in, what in the Bank of Tokyo Malta case, when the money went into the joint account, the bank was trying to get the residence as part of restitution and it was established that residence was purchased before these elements were placed. Thank you. Thank you both for your arguments. Welcome again to this court.